[Civ. No. 20749. First Dist., Div. One. Mar. 12, 1963.]

EDWIN F. LINGSCH et al., Plaintiffs and Appellants, v. GEORGE SAVAGE, Defendant and Respondent.

Raymond H. Levy for Plaintiffs and Appellants.

James C. Travis and Carl W. Svenson for Defendant and Respondent.

SULLIVAN, J.—In this action for damages for fraud brought against the sellers of certain real property and the real estate broker representing them, plaintiffs appeal from a judgment for the defendant broker entered after the sustaining of his demurrer without leave to amend.

The complaint filed February 13, 1962, alleges in substance as follows: That plaintiffs are and, at all times since July 10, 1961, were the owners of certain real property located in San Francisco; that prior to plaintiffs' acquisition thereof the defendants Nicholas Kotoff, Nell Kotoff and certain fictitious defendants were the owners, and the defendant Savage, a real estate broker, represented said owners; and that "said defendants entered into a uniform agreement of sale and deposit receipt, a copy of which is hereto attached as Exhibit 1, on the dates therein referred to, and that the consideration as indicated therein was fully paid."

It is further alleged: that at the time of the sale, the

"defendants and each of them specifically knew that the building was in a state of disrepair, and that units contained therein were illegal and that the building had been placed for condemnation by the proper officials" of San Francisco; that the plaintiffs did not know the foregoing matters and did not discover them until November 1961; that "the defendants and each of them wilfully and fraudulently failed to reveal said information" to the plaintiffs; that the plaintiffs purchased the property "justifiably relying on said defendants' non-disclosure, as aforesaid, and in the belief that said property was in legal tenantable and properly repaired condition, as required by law"; that the defendants "knew that plaintiffs relied on their non-disclosure . . . and intended that they should so rely, and that said non-disclosure was in fact and law misrepresentation of a material fact"; and that the actual market value of the property was $5,000 less than what it would have been in the condition as represented. The complaint sought $5,000 general and $10,000 punitive damages.

The Exhibit 1 attached to the complaint is a printed form of "Uniform Agreement of Sale and Deposit Receipt" commonly available at local title companies. So far as is pertinent to the problem before us, the agreement acknowledges receipt from the plaintiffs of $1,000 on account of $21,000, the purchase price of the property in question *"in its present state and condition."* (Italics added.) Among the terms and conditions of sale is the following provision: "No representations, guaranties or warranties of any kind or character have been made by any party hereto, or their representatives which are not herein expressed." The first part of the document then concludes with a statement that the "undersigned purchaser hereby agrees to purchase the herein described property for the price and *according to the conditions herein specified, . . .*" (Italics added.) Immediately below appear the signatures of both plaintiffs as purchasers and the signature of the defendant George Savage as "Agent for The Seller." The second part of the document is an approval of the contract signed by both sellers.

Defendant George Savage filed a demurrer[1] asserting that the complaint failed to state facts sufficient to constitute a cause of action and that it was ambiguous, unintelli-

---

[1]The demurrer is by Savage alone. The record does not disclose the status of the action in respect to the other defendants.

gible and uncertain in various particulars. In a separate paragraph, the demurrer also attacked the legal sufficiency of the facts pleaded on the ground that, as shown by the exhibit attached to the complaint, the plaintiffs offered to purchase the property ''in its present state and condition'' and expressly agreed, according to the provision set forth by us above, that there were no representations, guaranties, or warranties which were not expressed in the document. The court below sustained the demurrer without leave to amend.

We first dispose of a preliminary matter. Respondent suggests somewhat obliquely that the plaintiffs declined to amend their complaint. The instant case is not one where the court sustained the demurrer with leave to amend and the plaintiffs thereafter elected not to file an amended pleading. It is clear that the court sustained the demurrer without leave to amend and that the question of whether or not the court abused its discretion in so doing is open on this appeal. (Code Civ. Proc., §472c.) Respondent's above suggestion presumably refers to a colloquy between the court and appellants' counsel at the conclusion of the hearing on the demurrer. We have examined the transcript of the proceedings and are of the view that nothing therein contained precludes the appellants from raising the issues now before us. We therefore proceed to determine whether the complaint states a cause of action for fraud.

An examination of the pleading under attack persuades us that the only kind of fraud or deceit which it purports to assert is one based on concealment or nondisclosure. We find no allegations which can reasonably be construed as asserting fraud predicated upon intentional and affirmative misrepresentations, negligent misrepresentations or false promises. (Civil Code, §§ 1572, subds. 1, 2 and 4; 1710, subds. 1, 2 and 4.) We should further point out that the concealment which is here the essence of the alleged deceit does not involve, in the light of the allegations before us, any affirmative acts on the part of the defendants in hiding, concealing, or covering up the matters complained of. Nor do any allegations purport to set forth a confidential relationship subsisting between the plaintiffs on the one hand and all or any of the defendants on the other. We are therefore presented with an instance of mere nondisclosure, rather than active concealment, occurring between parties not in a confidential relationship. The foregoing observa-

tions, in our view, also correctly reflect the position here taken by appellants.

 The principle is fundamental that '' [d]eceit may be negative as well as affirmative; it may consist of suppression of that which it is one's duty to declare as well as of the declaration of that which is false.'' (23 Cal.Jur.2d, Fraud and Deceit, §45, p. 106; *Barder* v. *McClung* (1949) 93 Cal.App.2d 692, 697 [209 P.2d 808].) Thus section 1709 of the Civil Code provides: ''One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.'' Section 1710 of the Civil Code in relevant part provides: ''A deceit, within the meaning of the last section, is either: . . . 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; . . .'' In order to fasten liability under the above code sections on the person charged with the concealment or nondisclosure of certain facts, it is necessary to establish that he was under a legal duty to disclose them. (See generally 23 Cal.Jur.2d, § 46, pp. 111-114.) While such duty may arise from a fiduciary or other confidential relationship (cf. *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412 [159 P.2d 958]), no such relationship obtains in the case at bench and the duty of disclosure must therefore arise from other circumstances.

 It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. (*Herzog* v. *Capital Co.* (1945) 27 Cal.2d 349, 353 [164 P.2d 8]; *Clauser* v. *Taylor* (1941) 44 Cal.App.2d 453, 454 [112 P.2d 661]; *Rothstein* v. *Janss Investment Corp.* (1941) 45 Cal.App.2d 64, 68-71 [113 P.2d 465]; *Dyke* v. *Zaiser* (1947) 80 Cal.App.2d 639, 652-653 [182 P.2d 344]; *Barder* v. *McClung, supra,* 93 Cal.App.2d 692, 697; *Kuhn* v. *Gottfried* (1951) 103 Cal.App.2d 80, 86 [229 P.2d 137]; *Curran* v. *Heslop* (1953) 115 Cal.App.2d 476, 480-481 [252 P.2d 378]; *Kallgren* v. *Steele* (1955) 131 Cal.App.2d 43, 46 [279 P.2d 1027]; *Burkett* v. *J. A. Thompson & Son* (1957) 150 Cal.App.2d 523, 526 [310 P.2d 56]; *Buist* v. *C. Dudley DeVelbiss Corp.* (1960) 182 Cal.App.2d 325, 332 [6 Cal.

Rptr. 259]; *Crawford* v. *Nastos* (1960) 182 Cal.App.2d 659, 668 [6 Cal.Rptr. 425]; see 50 Cal.Jur.2d, Vendor and Purchaser, § 404, pp. 518-521; 29 So.Cal.L.Rev. 378; 80 A.L.R. 2d 1453.) Failure of the seller to fulfill such duty of disclosure constitutes actual fraud. (Civ. Code, §1572, subd. 3; *Barder* v. *McClung, supra.)*

■ The real estate agent or broker representing the seller is a party to the business transaction. In most instances he has a personal interest in it and derives a profit from it.[2] Where such agent or broker possesses, along with the seller, the requisite knowledge according to the foregoing decisions, whether he acquires it from, or independently of, his principal, he is under the same duty of disclosure. He is a party connected with the fraud and if no disclosure is made at all to the buyer by the other parties to the transaction, such agent or broker becomes jointly and severally liable with the seller for the full amount of the damages. (*Crawford* v. *Nastos, supra,* 182 Cal.App.2d 659, 665.)[3] ■ It is not necessary that there be a contractual relationship between the agent or broker and the buyer. (*Gill* v. *Johnson* (1932) 125 Cal.App. 296, 300 [13 P.2d 857, 14 P.2d 1017].) As this court said in *Nathanson* v. *Murphy* (1955) 132 Cal. App.2d 363, 368 [282 P.2d 174] "[a]n action for deceit does not require privity of contract." ■ No difficulty is encountered in imposing liability on an agent or broker for an affirmative and intentional misrepresentation on his part. (See, e.g., *Rothstein* v. *Janss Investment Corp., supra,* 45 Cal.App.2d 64; *Crawford* v. *Nastos, supra,* 182 Cal.App.2d 659.) Similarly, no difficulty should be found in imposing liability on him for mere nondisclosure since his conduct in the transaction *amounts to a representation of the nonexistence of the facts which he has failed to disclose* (cf. Rest., Torts, § 551). His fraud is of a different type; it is "neg-

---

[2]The record shows that in the instant case the defendant Savage was to receive $1,000 from the sellers as his commission.

[3]We are not here presented with and therefore deem it unnecessary to analyze the possible but less common situation where the knowledge requisite under the above decisions is possessed by the agent but not by the principal. We feel nevertheless that a duty of disclosure would be imposed upon the agent. In the absence of an exculpatory agreement, the principal may still be subject to liability (Rest.2d Agency, § 258). Where there is an exculpatory agreement, the honest principal may be relieved from liability for damages although the defrauded buyer is not precluded from rescinding the transaction. (Rest.2d Agency, §§ 259, 260; *Herzog* v. *Capital Co., supra,* 27 Cal.2d 349, 353.)

ative'' rather than ''affirmative'' (*Barder* v. *McClung, supra,* 93 Cal.App.2d 692) ; but it is fraud nonetheless.

It should be pointed out that whether the matter not disclosed by the seller or his agent is of sufficient materiality to affect the value or desirability of the property, and thus make operative the rule announced by the foregoing authorities, depends on the facts of the particular case. Some idea can be obtained of the reach of the foregoing rule and of the vitiating character of the particular nondisclosure from the holding of some of the cases cited above. Thus nondisclosure of the fact that a lot was filled with debris thereafter covered over (*Clauser* v. *Taylor, supra,* 44 Cal. App.2d 453) or that a lot contained filled ground to a substantial depth (*Rothstein* v. *Janss Investment Corp., supra,* 45 Cal.App.2d 64) or that the house sold was constructed on filled land (*Burkett* v. *J. A. Thompson & Son, supra,* 150 Cal.App.2d 523) or that improvements were added without a building permit and in violation of zoning regulations (*Barder* v. *McClung, supra,* 93 Cal.App.2d 692) or in violation of building codes (*Curran* v. *Heslop, supra,* 115 Cal. App.2d 476) has been held to be of sufficient substantiality to cause the duty of disclosure to arise.

Respondent cites a number of cases in support of the proposition that where parties deal at arm's length the rule of *caveat emptor* applies. We see no need of discussing the cases separately. As the court pointed out in *Dyke* v. *Zaiser, supra,* 80 Cal.App.2d 639, 653, undoubtedly there have been many cases[4] ''where it has been held that a man is not necessarily required to state everything he knows about the property involved. The present tendency, however, is to class concealment as actual fraud in those cases where the seller knows of facts which materially affect the desirability of the property which he knows are unknown to the buyer,'' citing *Clauser* and *Rothstein.* Respondent's contention that *caveat emptor* applies was made and rejected in *Kallgren* v. *Steele, supra,* 131 Cal.App.2d 43, 46, where the court held such rule inapplicable in a situation involving a seller's fraud. Nor can respondent find any support for his present position in *Milmoe* v. *Dixon* (1950) 101 Cal.App. 2d 257 [225 P.2d 273] or *Mesmer* v. *White* (1953) 121 Cal. App.2d 665 [264 P.2d 60]. Indeed, the *Milmoe* case is

[4]See for example the early decision of this court in *Bacon* v. *Soule* (1912) 19 Cal.App. 428 [126 P. 384].

738

squarely opposed to respondent's position and makes us wonder why respondent cited it at all. In *Milmoe,* the court upheld a judgment of damages for fraudulent nondisclosure relying not only on *Rothstein* and *Clauser* but on *Dyke* as well. The *Mesmer* case did not involve a sale of property, let alone the problem of the seller's exclusive knowledge of material facts in connection therewith. It does not stand for the proposition, as respondent would have it, that whenever parties are dealing at arm's length there can be no duty of disclosure. It held on its particular facts, bearing no similarity to those here involved, that no misrepresentations had been made, that the party allegedly defrauded had the opportunity to ascertain the true facts but neglected to do so, and that, in the absence of a confidential relationship, no duty to make a disclosure existed as a basis for actionable fraud.

The elements of a cause of action for damages for fraud based on mere nondisclosure and involving no confidential relationship would therefore appear to be the following: (1) Nondisclosure by the defendant of facts materially affecting the value or desirability of the property; (2) Defendant's knowledge of such facts and of their being unknown to or beyond the reach of the plaintiff; (3) Defendant's intention to induce action by the plaintiff; (4) Inducement of the plaintiff to act by reason of the nondisclosure and (5) Resulting damages. (See 2 California Pleading, Chadbourn, Grossman, Van Alstyne, §§ 990 et seq., pp. 91 et seq.; 2 Witkin, California Procedure, Pleading, § 348, pp. 1326-1327; § 352, pp. 1330-1331; § 356, p. 1334.)

Are all of these elements properly alleged in the pleading under attack? At the outset we observe that plaintiffs allege *nondisclosure* in respect to three specific matters: (a) "that the building was in a state of disrepair"; (b) "that the units contained therein were illegal"; and (c) "that the building had been placed for condemnation by the proper officials. . . ." All of these allegations appear to be deficient either in form or substance. Obviously the bare allegation of a state of disrepair is at once inadequate to show the materiality of such nondisclosed fact within the rules announced above and to establish that the nature and characteristics of the condition of the premises not disclosed were such that it was beyond the reach of, and not observable by, the buyers. The second specified nondisclosure is presented in allegations that are conclusionary and

nonfactual. The last alleged nondisclosure is at least uncertain and ambiguous. One may speculate whether the pleading has reference to a proceeding in eminent domain or for the abatement of a nuisance. If the latter is intended, it is clear that no allegations aver that the condition of the property was such as to be not observable by the plaintiffs.

We come next to *scienter*: The complaint alleges that the "defendants and each of them specifically knew" and that "plaintiffs did not know" the foregoing matters. However, there is no allegation that the defendants *knew* that such matters were *unknown* to the plaintiffs, thus setting forth the exclusiveness of defendants' knowledge. The third element involves the defendants' intention to induce action: We think this element is substantially pleaded, although expressed in terms of "reliance" rather than "inducement". The plaintiffs have alleged that they relied on the defendants' nondisclosure and that the defendants intended them to do so.[5] The pleading also attempts to set forth the element of causation in terms of reliance rather than of inducement: "That plaintiffs purchased said property justifiably relying on said defendants' nondisclosure, as aforesaid, and in the belief that said property was in legal tenantable and properly repaired condition as required by law." Obviously the word "justifiably" adds nothing to the allegation in the absence of allegations of facts showing that the actual inducement of plaintiffs to enter into the sale was justifiable or reasonable. (See 2 Witkin, California Procedure, Pleading, § 364, pp. 1344 et. seq.; 2 California Pleading, Chadbourn, Grossman, Van Alstyne, p. 95[6].) We think therefore that the deficiency in the last allegation is something inherently transmitted to it by the paucity of factual averments necessary to set forth the fundamental element of disclosure.

While the complaint has not been carefully drawn, we feel that there is a reasonable possibility that its *foregoing* de-

[5] Chadbourn, Grossman and Van Alstyne, *op. cit.* p. 95 point out that in concealment cases this element is usually expressed in terms of "inducement" whereas in intentional misrepresentation cases, it is expressed in terms of reliance, citing *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co.* (1959) 168 Cal.App.2d 191 [335 P.2d 995].

[6] This authority states: "A general allegation of inducement or reliance would thus seem to be sufficient, provided the complaint also sets forth enough facts to show that plaintiff's conduct was consistent with normal prudence and reasonableness under the circumstances."

fects can be cured by amendment and that, unless other reasons for the trial court's action exist, the demurrer should not have been sustained without leave to amend. (See *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]; *MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36]; 2 Witkin, California Procedure, Pleading, § 505, pp. 1496-1497.)

This brings us to the heart of the controversy. It is respondent's contention here, as it was below, that two provisions in the written contract of sale attached to the complaint and allegedly incapable of being cured by amendment, preclude plaintiffs from stating a cause of action for actionable fraud. From our examination of the proceedings had on argument of the demurrer, it would appear that the trial court rested its action principally if not entirely on the first of these provisions.

The allegations pertinent to the making of the agreement of sale point up plaintiffs', nonobservance of a simple and convenient ritual. We overlook their shortcomings and consider the agreement as properly incorporated by reference. As we said in *Byrne* v. *Harvey* (1962) 211 Cal.App. 2d 92, 103 [27 Cal.Rptr. 110] "[i]n such event it becomes as much a part of the pleading as if incorporated bodily therein [citation], may be examined to ascertain the contract of the parties [citation] and as Witkin states (2 Witkin, Cal. Procedure, p. 1177) 'its recitals may serve as a substitute for direct allegations ordinarily essential to the pleading,' . . ."

In addition, we note that provisions of an agreement bearing upon the right of either party to recover may thereby generate a defect or defense apparent on the face of the complaint, defeating recovery by the plaintiff and making the complaint subject to a general demurrer. (See *Harper* v. *Goldschmidt* (1909) 156 Cal. 245 [104 P. 451, 134 Am. St. Rep. 124, 28 L.R.A. N.S. 689]; *Burki* v. *Pleasanton School Dist.* (1912) 18 Cal.App.493, 498 [123 P. 546]; cf. *La Com* v. *Pacific Gas & Electric Co.* (1955) 132 Cal.App.2d 114, 117 [281 P.2d 894, 48 A.L.R.2d 1455].) It is from this basis that defendant launches his attack.

Defendant's first contention is in essence that the complaint on its face precludes actionable fraud since under the contract incorporated therein the plaintiffs agreed to purchase the property "in its present state and condition." A provision in a contract of sale that the buyer takes the property in the condition in which it is, or "as is," does not neces-

sarily confer on the seller a general immunity from liability for fraud. It is fairly well established in respect to sales of personal property that such a provision "does not prevent fraudulent representations relied on by the buyer from constituting fraud which invalidates the contract or is a ground for damages." (46 Am. Jur., Sales, § 319, p. 501; see 23 Am.Jur., Fraud and Deceit, § 55, p. 826; 58 A.L.R. 1181; *Ferguson* v. *Koch* (1928) 204 Cal. 342 [68 P. 342, 58 A.L.R. 1176].)

The same rule has been applied where such a provision has been included in a contract for the sale of real property. (*Smith* v. *Richards* (1839) 38 U.S. (13 Pet.) 26 [10 L.Ed. 42]; *Wolford* v. *Freeman* (1948) 150 Neb. 537 [35 N.W.2d 98]; *Cockburn* v. *Mercantile Petroleum, Inc.* (Tex. Civ. App. 1956) 296 S.W.2d 316.) In the early case of *Smith* v. *Richards, supra,* rescission of a contract for the sale of a gold mine was upheld on the ground of the seller's fraudulent misrepresentations despite a provision in which the seller stated: "I, however, sell it for what it is, gold or snow-balls; and I leave it to you to decide, whether you will take it at my price, or not." (38 U.S. (13 Pet.) 39.) In *Wolford* v. *Freeman, supra,* the buyer sought rescission of a contract for the sale of a dwelling house for the fraud of the seller's agent in failing to disclose that the house had been constructed on filled ground. Repaired cracks in the walls and foundation were visible. There was testimony that the buyer asked the cause of the cracks and the agent said that he did not know. There was other evidence that the agent stated that he had been instructed by the seller to inform prospective purchasers that the damage had been corrected. Included in the contract of sale was the following provision: "Purchaser acknowledges that he has been advised as to the settling of structure and is buying same as is." (35 N.W.2d at p. 101.) The Nebraska court held that the foregoing provision did not relieve the seller from fraud based on nondisclosure and upheld a decree of rescission on principles enunciating the seller's duty to disclose under such facts, citing *inter alia* the California cases of *Clauser* v. *Taylor, supra,* 44 Cal. App.2d 453 and *Rothstein* v. *Janss Investment Corp., supra,* 45 Cal.App.2d 64. Finally, in *Cockburn* v. *Mercantile Petroleum, Inc., supra,* the buyer of five gas wells "as is" recovered damages for the seller's fraud in misrepresenting that the wells were producing wells. The court's rationale was that the "as is" clause was based on the knowledge which

the buyer had at the time "which knowledge was based on the false representation that there were five producing wells. . . . " (296 S.W.2d 326.) The "as is" agreement was executed in reliance upon such representations.

Under particular circumstances, the use of an "as is" provision seems to convey the implication that the property is in some way defective and that the buyer must take it at his own risk. (See *Crawford* v. *Nastos, supra*, 182 Cal.App. 2d 659, 665-666, quoting from *Roby Motors Co.* v. *Cade* (La. App.) 158 So. 840; 6 C.J.S. 781.) The parties hereto have not cited, nor have we found, a California case giving precise definition to such a provision when included in an agreement for the sale of real property. We are of the opinion that, generally speaking, such a provision means that the buyer takes the property in the condition visible to or observable by him. (See *Crawford* v. *Nastos, supra*; *Wolford* v. *Freeman, supra*.) Where the seller actively misrepresents the then condition of the property (see *Crawford* v. *Nastos, supra*; *Cockburn* v. *Mercantile Petroleum, Inc., supra*) or fails to disclose the true facts of its condition not within the buyer's reach and affecting the value or desirability of the property, an "as is" provision is ineffective to relieve the seller of either his "affirmative" or "negative" fraud. In either situation the seller's conduct has, as it were, infected the buyer's knowledge of the condition of the property. An "as is" provision may therefore be effective as to a dilapidated stairway but not as to a missing structural member, a subterranean creek in the backyard or an unexploded bomb buried in the basement, all being known to the seller. We feel that such a view of an "as is" provision not only makes good sense but equates sound law with good morals. To enlarge the meaning of such a provision so as to make it operative against all charges of fraud would be to permit the seller to contract against his own fraud contrary to existing law. (Civ. Code, § 1668.)

We have already observed that in the case at bench there is a reasonable possibility that plaintiffs can amend their complaint. The efficacy of the clause now under discussion to raise a defense or show a defect on the face of the amended pleading will depend on the sufficiency of the particular facts pleaded therein to show actionable nondisclosure. For all we know, it may be plaintiffs' position that the clause in question is not free from defect or ambiguity and should be interpreted in a particular way, in which event

they should put some definite construction upon it by appropriate averment. (*Byrne* v. *Harvey, supra,* 211 Cal.App.2d 92, 115; *Lambert* v. *Haskell* (1889) 80 Cal. 611, 613 [22 P. 327]; *Bates* v. *Daley's Inc.* (1935) 5 Cal.App.2d 95, 101 [42 P.2d 706].)

It is also contended that the demurrer was properly sustained without leave to amend because of the inclusion of the following clause in the agreement at hand: "No representations, guaranties or warranties of any kind or character have been made by any party hereto, or their representatives which are not herein expressed."

It is well settled that where a principal is under a positive duty to make a disclosure, he cannot escape liability for his failure to do so by relying on a provision in the agreement of sale that there are no other representations except those therein expressed. (*Herzog* v. *Capital Co., supra,* 27 Cal.2d 349, 354; *Rothstein* v. *Janss Investment Corp., supra,* 45 Cal.App.2d 64, 72; *Buist* v. *C. Dudley DeVelbiss Corp., supra,* 182 Cal. App.2d 325, 331; Civ. Code, § 1668.)

The present complaint is drawn on the theory that all defendants therein named were under a duty to make a disclosure. In essence, the foregoing statute and authorities prevent a party from contracting against his own fraud. If the sellers cannot escape liability, it is obvious that the defendant Savage, who is not even a party to the agreement, cannot do so.

As the court stated in *Lemoge Electric* v. *County of San Mateo, supra,* 46 Cal.2d 659, 664, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. [Citations.]" This is particularly so in the case of an original complaint. (*Temescal Water Co.* v. *Department Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1].)

The judgment is reversed with directions to the trial court to grant the plaintiffs a reasonable time within which to prepare, serve, and file a further complaint amended in such particulars as they may be advised.

Bray, P. J., and Molinari, J., concurred.